**Sandra D'Alli LOGAN, Plaintiff,**

v.

**DEPARTMENT OF VETERANS AFFAIRS, Defendant.**

**No. 02–701 (RJL).**

United States District Court, District of Columbia.

July 28, 2004.

Sandra D'Alli Logan, Springfield, VA, Pro se.

Jane M. Lyons, United States Attorney's Office, Washington, DC, for Defendant.

*MEMORANDUM OPINION AND ORDER*

LEON, District Judge.

Before the Court is the defendant's Motion to Dismiss or for Summary Judgment. The plaintiff, who is proceeding *pro se*, alleges improper dissemination of the plaintiff's medical history in violation of the Privacy Act, violation of the Health Insurance and Portability Accountability Act of 1996 ("HIPAA") rules on disclosure of individualized identifiable medical information, and violation of the plaintiff's Fifth Amendment due process rights.[1] Upon consideration of the defendant's motion to dismiss, the plaintiff's opposition, and the entire record herein, the Court dismisses the plaintiff's two statutory claims for lack of subject matter jurisdiction and the plaintiff's Fifth Amendment claim for failure to state a claim upon which relief may be granted. Accordingly, the Court GRANTS the defendant's Motion to Dismiss or for Summary Judgment and enters judgment for the defendant.

**BACKGROUND**

This case arises out of an internal Department of Veterans Affairs ("VA") investigation into alleged violations of VA policy by plaintiff Sandra D'Alli Logan's ("Logan") internship supervisor, Robert Tecklenburg ("Tecklenburg").[2] On April 4, 2000, Tecklenburg's supervisor, Philip Hamme ("Hamme"), appointed an Administrative Board of Investigation ("ABI") to investigate several allegations of violations of VA policy by Tecklenburg.[3],[4] Compl. ¶¶ 20, 37; Def.'s Mot. to Dismiss, Ex. 5. During the investigation, interviews were conducted with Tecklenburg, two of his subordinates (i.e., Alice Ford and Renaee Allen), and Sara Most, a CBOC nurse and

1. U.S. Const. amend. V; 5 U.S.C. § 552a (2000); 42 U.S.C. §§ 1320d to d-8 (2000).

2. From May 1999 until December 1999, Logan served as an intern at the Alexandria Vet Center ("Vet Center") as part of her course of study at Marymount University School of Education and Human Services. Compl. ¶ 5; Def.'s Mot. to Dismiss, Ex. 2. In addition to working at the Vet Center, Logan received medical treatment at the Community-Based Outpatient Clinic ("CBOC"), which is located at the Vet Center and staffed by VA Medical Center ("VAMC") employees. Compl. ¶ 6; Def.'s Mot. to Dismiss, Ex. 1 ¶ 2.

3. Administratively, the Vet Center is part of the VA's Readjustment Counseling Service ("RCS"), and during the time in question, Hamme's title was RCS Regional Manager of Region 1b, Mid-Atlantic States. Compl. ¶¶ 5-7; Def.'s Mot. to Dismiss, Ex. 1 ¶ 1.

4. Hamme convened the ABI after receiving four Reports of Contact from Tecklenburg's subordinates alleging (1) that Logan used Vet Center Facilities after her internship concluded without authorization, and (2) that Logan and Tecklenburg engaged in an inappropriate personal relationship during her internship. Compl. ¶¶ 15, 17-19. The Reports of Contact also alleged poor supervision and management by Tecklenburg. Def.'s Mot. to Dismiss, Ex. 1 ¶¶ 5-6.

Logan's "nurse case manager."[5] Compl. ¶¶ 20–31. Logan was not interviewed during this investigation. *Id.* ¶ 20. Several of those interviewed alleged that Logan had a "crush" on Tecklenburg (Compl.¶¶ 21–23, 25–26, 29, 31) and also offered comments specifically on Logan's mental health (Compl.¶¶ 24, 27, 28). The ABI's final report ("Report") was completed on June 7, 2000, and led to Tecklenburg's demotion, which was later reversed.[6] Pl.'s Opp., Exs. 2–4; Def.'s Mot. to Dismiss, Ex. 1 ¶ 9.

Logan brought this action in 2002 against the VA alleging that the incorporation into the Report of other employees' speculation about her feelings towards Tecklenburg and their non-expert speculation about her mental health has prevented her from gaining employment as a government psychotherapist. Logan also alleges other improper disclosures of her medical history.[7] Essentially, Logan's complaint consists of three claims: (1) a violation of the Privacy Act's disclosure protocols by including interview statements regarding Logan's mental health in the Report (Count I) (Compl.¶¶ 36–38); (2) a violation of the HIPAA provisions governing disclosure of individually identifiable health information stemming from the disclosure of Logan's mental health status by VA employees during the Tecklenburg investigation (Count IV) (Compl.¶ 56–61); and (3) a violation of Logan's due process rights in obtaining employment as a government psychotherapist by including remarks about her mental health status in the Report on Tecklenburg (Counts II and III) (Compl.¶¶ 42, 49, 51).[8]

Logan seeks various remedies, including monetary damages, and injunctive and declaratory relief. *See* Compl. Prayer for Relief. The VA moves to dismiss the Privacy Act and HIPAA claims for lack of subject matter jurisdiction and to dismiss the Fifth Amendment due process claim for failure to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(1), 12(b)(6).

## STANDARD OF REVIEW

Federal district courts are courts of limited jurisdiction and "possess only that power conferred by [the] Constitution and [by] statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Furthermore, the United States and its agencies are immune from suit unless Congress has expressly provided consent to be sued.

5. Logan's complaint heavily references the investigation interview transcripts, but she did not submit the Report to this Court.

6. The Report is retrievable from the General Personnel Records (Title 38)-VA. Def.'s Mot. to Dismiss 10 n. 3 (referencing 53 Fed.Reg. 27258–62 (July 19, 1988)).

7. Logan's complaint is a veritable laundry list of wrongdoing by the VA and its employees. To name just a few, Logan alleges that (1) the VA does not provide adequate access to care and privacy for women patients (Compl.¶ 11); (2) Hamme used the ABI to "further his stated political agenda, which was to 'get' Tecklenburg." (Compl.¶ 17); (3) Hamme "misrepresented his positional authority" over Most to get her to testify at the ABI (Compl.¶ 32); and (4) the RCS "conducts a disproportionate number of investigations against its employees" and the RCS investigation process is "a textbook example of fraud, waste, and abuse." (Compl.¶ 41). Logan makes similar claims in the Plaintiff's Opposition to Defendant's Motion to Dismiss: (1) Hamme is "directly responsible for frequently recurring episodes of patient abuse within the [RCS]" (Pl.'s Opp. 3); (2) Hamme "prevents RCS practitioners from using evidence based, best practice treatment modalities" (*Id.* at 5); (3) Hamme "exercises racial discrimination in his hiring practices" (*Id.*); and so forth.

8. Logan presented her requested remedy of a name-clearing hearing as a separate count in her complaint, but the Court will consolidate the allegations contained in both counts into one action alleging Fifth Amendment due process violations.

United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). There is a presumption against federal court jurisdiction and the burden is on the party asserting the jurisdiction, the plaintiff in this case, to establish that the Court has subject matter jurisdiction over the action. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182–83, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court "must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiffs." *Fitts v. Federal Nat'l Mortgage Ass'n*, 44 F.Supp.2d 317, 321 (D.D.C.1999). However, when the inquiry focuses on the Court's power to hear the claim, the Court may give the plaintiff's factual allegations closer scrutiny and may consider materials outside the pleadings. *See* Fed.R.Civ.P. 12(b)(1); *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C.Cir.1992); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F.Supp.2d 9, 13 (D.D.C.2001).

The court will only dismiss a complaint under Rule 12(b)(6) for failure to state a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994). However, while the Court accepts as true all of the factual allegations set forth in the complaint, *Doe v. United States Dept. of Justice*, 753 F.2d 1092, 1102 (D.C.Cir.1985), and construes the complaint liberally in favor of the plaintiff, *Schuler v. United States*, 617 F.2d 605, 608 (D.C.Cir.1979), it "need not accept inferences drawn by [the] plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal*, 16 F.3d at 1276.

The Court is also mindful of its duty to read Logan's allegations liberally as Logan is a *pro se* litigant. It is well accepted in this Circuit that pleadings of *pro se* litigants are held to "less stringent standards" than those filed by litigants with counsel and must be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *see also Richardson v. United States*, 193 F.3d 545, 548 (D.C.Cir.1999). However, even *pro se* litigants must still allege a cause of action that falls within the subject matter jurisdiction of this Court.

## ANALYSIS

I. *Privacy Act Claims*

The Privacy Act provides that district courts have subject matter jurisdiction over an individual's civil action against an agency whenever an agency

> (A) makes a determination under [§ 552a(d)(3) ] not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection; (B) refuses to comply with an individual request under [§ 552a(d)(1) ]; (C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual .... [9]

5 U.S.C § 552a(g)(1) (2000). Logan asserts that this Court has jurisdiction over

9. The Privacy Act defines "record" to mean "any item, collection, or grouping of information about an individual that is maintained by

her claims under § 552a(g)(1), but does not specify which subsection of § 552a(g)(1) her Privacy Act claim will proceed under. Compl. ¶ 1. Logan's complaint, construed broadly, contemplates claims under the Privacy Act for improper dissemination or failure to prevent dissemination of Logan's mental health history, as well as failure to secure Logan's written authorization to disclose this information during the Tecklenburg investigation. *See* Compl. ¶¶ 36–38. A broad reading of the pleadings and other materials shows that Logan fails to meet the basic requirements for any cause of action under the Privacy Act.

Logan's complaint alleges, at most, that the VA and/or VA employees improperly disclosed her mental health information in violation of the Privacy Act. *See* 5 U.S.C. §§ 552a(b), (g)(1)(D). To pursue a claim for injunctive relief and monetary damages based on improper disclosure in violation of the Privacy Act, a plaintiff must prove four elements: 1) the disclosed information is a "record" contained within a "system of records"; 2) the agency improperly disclosed the information; 3) the disclosure was willful or intentional; and 4) the disclosure adversely affected the plaintiff. *See Fisher v. Nat'l Institute of Health,* 934 F.Supp. 464, 468 (D.D.C.1996), *aff'd,* 107 F.3d 922, 1996 WL 734079 (D.C.Cir.1996).

At the outset, Logan fails to establish the key requirement for a Privacy Act claim: that the information allegedly disclosed was contained in a "record" within a "system of records." The D.C. Circuit has defined two criteria for information to be a "record" within the meaning of the Privacy Act: (1) "the information must be 'about' an individual," and (2) "the information must contain the individual's name or identifying particular." *Tobey v. NLRB,* 40 F.3d 469, 471 (D.C.Cir.1994) (noting that information containing an individual's name does not necessarily mean it is "about" that individual). Evidence submitted by Logan regarding the investigation into Tecklenburg's fitness for duty supports the conclusion that the ABI and its Report were "about" Tecklenburg, not Logan. Pl.'s Opp., Exs. 2–4. Additionally, Logan has provided no evidence indicating that the Report could be retrieved using her name or identifying label. Thus, as Logan has failed to show that the allegedly improperly disclosed information is a "record" such that the Privacy Act would apply to her situation, this Court must dismiss her claim for lack of subject matter jurisdiction.[10]

an agency, including ... medical history ... and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual ...." 5 U.S.C. § 552a(a)(4). A "system of records" is "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5).

10. Logan's claim could also be dismissed pursuant to 12(b)(6) for failure to state a claim upon which relief may be granted. Although Logan alleges that "[d]uring the employment process and background investigation, the unfavorable investigation will be admitted," she fails to show that the VA has in fact disclosed the Report outside of the agency or that the VA routinely discloses any information pertaining to an individual that resides in other individuals' files such that a future disclosure would be likely. Compl. ¶ 44. She also fails to establish that individual Vet Center employees improperly disclosed information regarding Logan's mental health status during the Tecklenburg investigation. The comments in question fall within the Privacy Act's allowable disclosure exception, 5 U.S.C. § 552a(b)(1), or were gathered either from observation of Logan or formed on the basis of comments Logan allegedly made regarding her mental health. Finally, Logan produces no evidence indicating that even if the information has somehow been intentionally and

II. *HIPAA Claim*

Logan additionally alleges that Vet Center employees violated the HIPAA provisions governing disclosures of individually identifiable health information. Congress enacted HIPAA, in part, to address concerns about the confidentiality of health information, particularly in the era of electronic communication. Section 262 of HIPAA (codified as 42 U.S.C. §§ 1320d to d–8) defines terms and imposes requirements on the Department of Health and Human Services ("HHS"), health plans, and healthcare providers involved in the exchange of health information. HIPAA provides for both civil and criminal penalties to be imposed upon individuals who improperly handle or disclose individually identifiable health information. 42 U.S.C. §§ 1320d–5 to d–6. However, the law specifically indicates that the Secretary of HHS shall pursue the action against an alleged offender, not a private individual. *See O'Donnell v. Blue Cross Blue Shield of Wyo.,* 173 F.Supp.2d 1176, 1179–80 (D.Wyo.2001) (finding that HIPAA creates neither an express nor an implied private cause of action).

Here, Logan's complaint appears to allege that Most, Tecklenburg, and Ford violated the HIPAA provisions governing disclosure of individually identifiable health information by giving testimony regarding Logan's mental health during the Tecklenburg investigation. *See* Compl. ¶¶ 55–61. As HIPAA creates no private right of action concerning disclosure of individually identifiable health information, this Court has no subject matter jurisdiction over Logan's HIPAA claim, and therefore, must dismiss this claim pursuant to Rule 12(b)(1).

III. *Fifth Amendment Claim*

Finally, Logan alleges that the VA's actions have violated her due process rights because: (1) the VA's actions in maintaining a record containing information about her mental health status have precluded her from gaining employment as a government psychotherapist; and (2) the comments about her mental health contained in the Report have damaged her reputation and precluded her from gaining employment.

The Fifth Amendment's Due Process Clause forbids the government from depriving an individual of any legitimate property or liberty interest without certain procedural safeguards. *See* U.S. Const. amend. V. The Constitution, however, does not create property interests. Instead, state and federal statutes and regulations create property interests, which the

improperly disclosed, it has adversely affected her emotional status or her reputation and employability.

Logan also fails to state a claim under the remaining subsections of 5 U.S.C. § 552a(g)(1). Logan concedes that she "did not ask the VA to amend the [the Report] under [5 U.S.C. § 552a(g)(1)(A) ] and, indeed, declined the offer to do so, because that would not serve any productive purpose." Pl.'s Opp. 21; Pl.'s Stat. of Facts ¶ 9. Likewise, Logan does not contend that the VA improperly denied her request to gain access to the report. *See* 5 U.S.C. § 552a(g)(1)(B). In fact, Logan confirmed that she received copies of the Report after requesting the report pursuant to the Freedom of Information Act. Pl.'s Stat. of Facts ¶ 8; Def.'s Mot. to Dismiss, Ex. 1 ¶ 11. Finally, although Logan alleges that the medical information in the Report is erroneous (Compl. ¶ 37; Pl.'s Opp. 17 & Ex. 5), she fails to show that comments about her mental health status were anything other than statements of opinion or that she had established the other elements necessary for a prima facie case under 5 U.S.C. § 552a(g)(1)(C). *See Blazy v. Tenet,* 979 F.Supp. 10, 20 (D.D.C.1997) (unverifiable opinions of other employees or supervisors regarding plaintiff's mental stability contained in plaintiff's file do not violate Privacy Act); *McCready v. Principi,* 297 F.Supp.2d 178, 193 (D.D.C.2003).

Constitution protects. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Doe v. Gates,* 981 F.2d 1316, 1320 (D.C.Cir. 1993). Thus, for the following reasons, the Court believes Logan has failed to allege the necessary facts to sustain a Fifth Amendment claim.

 First, as to the deprivation of due process in connection with her unsuccessful job applications for the RCS and VACO jobs, no violation is possible because she had no constitutionally protected property interests in those positions. *See White v. Office of Personnel Mgmt.,* 787 F.2d 660, 663–64 (D.C.Cir.1986), *cert. denied,* 479 U.S. 885, 107 S.Ct. 276, 93 L.Ed.2d 252 (1986). Second, as to Logan's claim that her liberty interests have been violated by the VA's actions in maintaining the inaccurate Report, that too must be dismissed because the facts alleged in Logan's complaint do not support the conclusion that the government has violated her liberty interests without affording her procedural due process. For example, Logan repeatedly accuses the VA of "compiling and disseminating inaccurate, derogatory information" about her mental health status that prevented her from being hired by RCS or VACO and that prevents her from working as a government psychotherapist. Compl. ¶¶ 42, 44, 47, 49, 51. Logan, however, has offered no information to support her contention that the VA has actually released the Report containing the objectionable information to any of these alleged employers outside the VA, nor has she shown than the VA's actions have interfered with her ability to practice in her chosen field.[11] *See Kartseva v. Dep't of State,* 37 F.3d 1524, 1529 (D.C.Cir.1994). Indeed, Logan's rejection for the three positions she applied for *preceded* the Report's release. Simply stated, there is no causal connection between the Report and her failure to get those jobs. Accordingly, this Court dismisses Logan's Fifth Amendment claim pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

### ORDER

For the reasons set forth above, it is this 28th day of July, 2004 hereby

**ORDERED** that the defendant's Motion to Dismiss [Dkt # 18] is **GRANTED**; and it is further

**ORDERED** that the plaintiff's complaint be dismissed with prejudice.

**SO ORDERED.**

---

11. In fact, with respect to the records generated by the Tecklenburg ABI, Hamme stated that "[n]o information contained in these records, to include the investigation itself, has been released by [his] office to anyone outside of VA [sic]." Def.'s Mot. to Dismiss, Ex. 1 ¶ 11.