NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

GARY GARSHA, *Plaintiff/Appellant*,

*v.*

CLAIRE HILL, et al., *Defendants/Appellees*.

No. 1 CA-CV 22-0109
FILED 2-2-2023

Appeal from the Superior Court in Maricopa County
No. CV2019-055926
The Honorable Sally Schneider Duncan, Judge (*Retired*)

**AFFIRMED**

COUNSEL

Nearhood Law Offices PLC, Scottsdale
By Patricia A. Premeau
*Counsel for Plaintiff/Appellant*

Dessaules Law Group, Phoenix
By Jonathan A. Dessaules, F. Robert Connelly, David E. Wood
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Michael J. Brown and Judge Randall M. Howe joined.

---

**P E R K I N S**, Judge:

¶1 Gary Garsha appeals the entry of summary judgment in favor of Claire Hill on multiple claims arising from an alleged loan agreement between the parties. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 The parties met while working together overseas. Garsha is a United States citizen, and Hill is from the United Kingdom. They moved to Arizona and married in 2014.

¶3 According to Garsha, he loaned Hill $36,200, and she promised to repay him by buying a home in both their names. Garsha wired the funds both before and during the marriage. Hill deposited the funds in a foreign bank account. They divorced in 2018, but had not bought a home together.

¶4 In the dissolution, Garsha signed a consent decree, which stated that he agreed to it voluntarily and without duress or coercion. The decree awarded Hill the foreign bank account as her separate property with no offset to Garsha and no mention of any outstanding loan. The consent decree also released all claims arising "*by reason of the marital relationship existing between the parties under any present or future law or that he or she otherwise has or might have or be entitled to claim in or against the property and assets of the other . . . .* " (Emphasis added).

¶5 The parties continued to live together after the divorce. According to Garsha, they divorced only "on paper" and intended to remarry and buy a home in both their names. Instead, Hill bought a condominium in 2019 and titled it to the Claire E. Hill Trust, dated September 14, 2016 ("the Trust"), without telling Garsha. Garsha is not a beneficiary of the Trust. A month later, Hill ended their relationship and moved into the condominium.

**¶6**          Garsha then sued Hill, asserting ten claims related to the $36,200 he wired to Hill, which he calls "the Loan." He alleged breach of this loan, fraud, promissory estoppel, unjust enrichment, conversion, pattern of unlawful activity, intentional infliction of emotional distress ("IIED"), equitable lien, constructive trust, and "money had and received." The superior court granted Hill's motion to dismiss the claim for pattern of unlawful activity but declined to dismiss the IIED claim or the remaining claims, finding the release in the consent decree was ambiguous about the parties' intent. The court thereafter granted the Trust summary judgment on all claims, finding it was not a proper litigant. The court granted Hill's motion for summary judgment on the remaining counts without comment and awarded a portion of her attorneys' fees and costs. Garsha timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶7**          We review the superior court's grant of summary judgment *de novo*, affirming if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Ariz. R. Civ. P. 56(a); *Williamson v. PVOrbit, Inc.*, 228 Ariz. 69, 71, ¶ 11 (App. 2011). We may affirm the grant of summary judgment on any grounds raised in the superior court. *See Zuck v. State,* 159 Ariz. 37, 42 (App. 1988).

## I.      Claims Related to the $36,200

**¶8**          Hill contends that the release in the consent decree bars Garsha's claims related to the $36,200. In a related argument, Hill asserts that *res judicata* and judicial estoppel preclude Garsha from taking positions contrary to the consent decree. Garsha responds that the release is ambiguous, which was the reason the superior court denied Hill's motion to dismiss; therefore, the release does not justify the grant of summary judgment.

**¶9**          The interpretation of the consent decree, like a contract, is a question of law or a mixed question of law and fact, both subject to *de novo* review. *See In re Gen. Adjudication of All Rts. to Use Water in Gila River Sys. & Source,* 212 Ariz. 64, 72, ¶ 24 n.12 (2006) ("[W]e are mindful that 'since consent decrees . . . have many of the attributes of ordinary contracts, they should be construed basically as contracts.'") (quoting *United States v. ITT Cont'l Baking Co.,* 420 U.S. 223, 236 (1975)). Deciding whether a contract is ambiguous is a question of law. *Hartford v. Indus. Comm'n of Ariz.,* 178 Ariz. 106, 111 (App. 1994).

¶10 Hill contends the release bars all claims related to the alleged loan. Garsha argues the release applies only to claims that arise out of the marital relationship and does not apply here because his claims arose after the decree. "The mere fact that the parties disagree as to the meaning of language contained in the agreement is not sufficient to create an ambiguity." *United California Bank v. Prudential Ins. Co. of Am.,* 140 Ariz. 238, 258 (App. 1983).

¶11 The parties agreed to release *all* claims "by reason of the marital relationship . . . *or that he or she otherwise has or might have or be entitled to claim in or against the property or assets of the other, . . . whether now owned or hereafter in any manner acquired by the other party . . . ."* (Emphasis added). The release also waives the right to sue the other party "for the purpose of enforcing any or all of the rights relinquished under this Decree."

¶12 The release is not ambiguous. It distinguishes between claims arising from the marital relationship and claims "*otherwise*" arising. Thus, it is not limited to claims arising during the marriage. Garsha's construction would render meaningless the reference to claims that a party "*otherwise . . . might have[.]*" This language also recognizes there may be future claims and releases all claims one party may have against the other's current or future property or assets. The release also states that it is a "complete defense" to any future suit between the parties. The unambiguous release bars all claims related to the $36,200 or the alleged loan.

¶13 Garsha attempts to avoid the release by arguing that he was fraudulently induced into signing the consent decree. The proper procedure to challenge the decree on the grounds that it was fraudulently induced is a motion to alter or amend the decree or a motion for relief from the decree. *See* Ariz. R. Fam. Law P. ("Rule") 83, 85. A separate action to return funds awarded to Hill in the decree is an improper collateral attack on the decree.

¶14 Garsha correctly points out that Hill did not raise this argument based on Rule 83 or Rule 85 in the superior court. An argument raised for the first time on appeal is generally untimely and deemed waived. *Odom v. Farmers Ins. Co. of Ariz.,* 216 Ariz. 530, 535, ¶ 18 (App. 2007). But Hill raised the release as a defense in the summary judgment proceedings, and the waiver rule is procedural not jurisdictional. *Id.* "If application of a legal principle, even if not raised below, would dispose of an action on appeal and correctly explain the law, it is appropriate for [the appellate court] to consider the issue." *Evenstad v. State,* 178 Ariz. 578, 582

(App. 1993). Garsha cannot seek to avoid the release in the consent decree by filing this separate action.

¶15 The superior court did not err by entering summary judgment against Garsha for claims related to the alleged loan because he released all such claims in the consent decree. Having affirmed summary judgment on these grounds, we need not address the other arguments raised in Hill's summary judgment motion.

## II. Intentional Infliction of Emotional Distress Claim

¶16 To state a claim for IIED, the plaintiff "must show the defendant caused severe emotional distress by committing extreme and outrageous conduct with the intent to cause emotional distress or with reckless disregard of the near-certainty that such distress would result." *Shepherd v. Costco Wholesale Corp.,* 246 Ariz. 470, 475, ¶ 19 (App. 2019), *vacated in part on other grounds,* 250 Ariz. 511 (2021). The superior court makes a preliminary decision whether the conduct is "extreme and outrageous," allowing the claim to go to the jury only if reasonable minds may differ. *Nelson v. Phoenix Resort Corp.,* 181 Ariz. 188, 199 (App. 1994).

¶17 Assuming as true Garsha's claim that Hill married him for financial or other undisclosed reasons, this conduct does not approach the level of outrageousness needed to prove intentional infliction of emotional distress. The "conduct necessary to sustain an [IIED] claim falls at the very extreme edge of the spectrum of possible conduct." *Watts v. Golden Age Nursing Home,* 127 Ariz. 255, 258 (1980); *see also* Restatement (Second) of Torts § 46 cmt. d (1965) ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. . . . There is no occasion for the law to intervene in every case where some one's feelings are hurt."); *Ford v. Revlon, Inc.,* 153 Ariz. 38, 43 (1987) (Arizona follows the standard for liability set forth in Restatement (Second) of Torts § 46). Although Hill's alleged conduct was hurtful and possibly deceitful, it does not give rise to an IIED claim. The superior court did not err in dismissing this claim.

## III. Dismissal of All Claims Against the Trust

¶18 Garsha argues that the superior court erred in dismissing all claims against the Trust instead of allowing him to amend the complaint to name the Trust as a defendant in the correct form. Because we have affirmed the judgment for Hill on all claims, amending the complaint to properly name the Trust as a defendant would be futile. *See Stair v. Maricopa*

*County*, 245 Ariz. 357, 366, ¶ 37 (App. 2018) (denial of leave to amend complaint is appropriate when amendment would be futile). The court did not err by dismissing the Trust.

## IV.     Constructive Trust Claim

**¶19**        Garsha sought a constructive trust for the condo on the grounds that Hill used the $36,200 for the down payment. We review the availability of this equitable remedy *de novo*. *Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 409, ¶ 106 (App. 2012).

**¶20**        "A constructive trust is typically imposed when there is a *wrongful holding* of property which unjustly enriches the defendant at the expense of the plaintiff." *Burch & Cracchiolo, P.A. v. Pugliani,* 144 Ariz. 281, 286 (1985). Because Garsha released any interest in the $36,200 when he signed the consent decree, Hill did not wrongfully retain the funds. Garsha was not entitled to a constructive trust and the superior court did not err by granting summary judgment on this claim.

## V.     Attorneys' Fees and Costs on Appeal

**¶21**        Hill requests an award of attorneys' fees and costs on appeal under A.R.S. § 12-341.01. Garsha did not respond to the fee request. The decision to award fees under § 12-341.01(A) is discretionary. *Ader v. Estate of Felger,* 240 Ariz. 32, 45, ¶ 48 (App. 2016). After considering the relevant factors identified in *Associated Indem. Corp. v. Warner,* 143 Ariz. 567, 570 (1985), we grant Hill's request for a reasonable amount of attorneys' fees upon compliance with Arizona Rule of Civil Appellate Procedure 21.

### CONCLUSION

**¶22**        We affirm.

